IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

**MEDIWARE INFORMATION
SYSTEMS, INC.,**

    **Plaintiff,**

    **v.**                                        **Case No. 06-2391-JWL**

**McKESSON INFORMATION
SOLUTIONS, LLC,**

    **Defendants.**

_____

**MEMORANDUM & ORDER**

Plaintiff Mediware Information Systems, Inc. ("Mediware")[1] has brought this diversity action against McKesson Information Solutions, LLC, ("McKesson")[2] alleging tortious interference with contract (Count I), tortious interference with business expectancy (Count II), and misappropriation of a trade secret (Count III). This matter is presently before the court on McKesson's motion to stay the proceedings (doc. 5) pending the resolution of an action in the Eastern District of New York involving Mediware.

---

[1] Mediware is a New York corporation with its principal place of business located in Lenexa, Kansas. Mediware designs blood management software and provides clinical information systems to the health care industry.

[2] McKesson is a Delaware limited liability company with its principal place of business located in Georgia. McKesson provides software, hardware and various services to hospitals and others in the health care industry.

**I.      Standard**[3]

This court has the power to stay proceedings pending before it as part of its inherent power to control its docket. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *Pet Milk Co. v. Ritter*, 323 F.2d 586, 588 (10th Cir. 1963); *Barton Solvents, Inc. v. Southwest Petro-Chem, Inc.*, 836 F. Supp. 757, 763 (D. Kan. 1993). The court should use this power in its discretion to provide "economy of time and effort for itself and for counsel and litigants appearing before the court." *Landis*, 299 U.S. at 254; *Barton Solvents*, 836 F. Supp. at 763. In exercising this discretion, the court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 255. The Tenth Circuit has emphasized that "[t]he right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983). Courts must stay within the "bounds of moderation" when granting a stay. *Landis*, 299 U.S. at 256.

**II.     Analysis**

McKesson argues that due to an action pending in the Eastern District of New York (the New York case) a stay is necessary in this case (the Kansas case) because: (1) the Kansas case is duplicative of the New York case; (2) key issues in the Kansas case depend on the resolution of the New York case; (3) the New York case may have preclusive effects

---

[3]Although McKesson repeatedly cites to *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), it never addresses the standards set forth in that case. *Colorado River* applies when there are parallel state and federal proceedings, which is not the situation in this case. *See id*. at 817-18.

2

on the Kansas case; and (4) proceeding with the Kansas case will be inefficient, wasteful of the court's and parties' resources, and encourage piecemeal litigation. Nevertheless, after examining the elements of the claims asserted in both the Kansas case and the New York case, as well as Mediware's arguments underlying those claims, the court exercises its discretion to deny McKesson's motion to stay.

The Kansas case claims may be summarized as follows. The tortious interference with contract claim alleges that McKesson offered data extraction services to Mediware's software customers, the acceptance of which, according to Mediware, would require those customers to breach the confidentiality conditions of their license agreements with Mediware. The tortious interference with prospective advantage claim alleges that by offering the data extraction services to Mediware's existing customers, McKesson intentionally interfered with Mediware's expectancy that those customers would utilize its new HCLL software. Mediware alleges that McKesson misappropriated its trade secrets by utilizing a third party, who improperly disclosed the trade secrets, to acquire knowledge of Mediware's software to facilitate the data extraction services McKesson offered to Mediware's customers.

In the New York case, on the other hand, Mediware has sued Korchek Technologies (Korchek)[4] for breach of contract and tortious interference with contract. According to the contract at issue, Mediware agreed to train Korchek employees to enable them to provide

---

[4]Korchek Technologies, a Connecticut Limited Liability Company, provides consulting services and software in the healthcare industry.

3

support for Mediware's software products and bound Korchek to uphold certain requirements regarding its knowledge of Mediware's software. Both the tortious interference claim and the breach of contract claim are premised on Mediware's allegations that Korchek provided services to Mediware's customers without Mediware's consent.

McKesson contends that Korchek is the third party Mediware refers to in its misappropriation claim. Therefore, according to McKesson, Mediware would have to prove that Korchek violated some duty, contractual or otherwise, in order to prevail on that claim. McKesson further contends that the success of Mediware's tortious interference claims depends on whether McKesson improperly acquired Mediware's trade secrets from Korchek. Therefore, McKesson concludes, the Kansas case depends on the resolution of the New York case because a determination that Korchek violated its duties to Mediware is necessary to Mediware's success on all claims involved in the Kansas case. The court disagrees.

Mediware's misappropriation claim may involve some issues that resemble those being litigated in the New York case. There are multiple ways to prove misappropriation under the Kansas Uniform Trade Secrets Act, K.S.A. 60-3320 *et. seq.*[5] Mediware's

---

[5]K.S.A.§ 3320(2) defines "misappropriation" as follows:

(2) "Misappropriation" means:
(i) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(ii) disclosure or use of a trade secret of another without express or implied consent by a person who
(A) used improper means to acquire knowledge of the trade secret; or
(B) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was
(I) derived from or through a person who had utilized improper means to acquire it;

4

allegations contend that McKesson misappropriated its trade secret by utilizing a third party. As mentioned above, McKesson alleges that Korchek is the third party to which Mediware refers. Mediware, however, has not specifically named Korchek as the third party and further contends that Korchek is not the only party capable of providing McKesson with the requisite knowledge. McKesson advises the court that this contention by Mediware is a "red herring" and should be disregarded.

Nevertheless, the court concludes that, despite McKesson's advice, there is not enough information before it in this case to support the conclusion that the issues surrounding Mediware's misappropriation claim in the Kansas case are substantially similar enough to the issues in the New York case as to justify imposing a stay on the Kansas proceedings. Furthermore, based on the record before the court at this time, neither the tortious interference with contract claim[6] nor the tortious interference with business expectancy claim[7] in the Kansas case specifically require Mediware to prove that McKesson utilized a

---

(II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
(III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
(C) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

[6]To prevail on this claim under Kansas law, Mediware must prove: "(1) the contract; (2) the wrongdoer's knowledge thereof; (3) his [or her] intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom." *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 423, 77 P.3d 130, 150 (2003).

[7]To prevail on this claim under Kansas law, Mediware must prove:

(1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or

5

third party in effecting the alleged tortious interference.

Although the New York case may inevitably involve some issues that resemble those that arise in the Kansas case, the court certainly does not find that the actions are "duplicative" as McKesson alleges. Furthermore, the court does not find that the few similarities that may potentially develop in the two cases are sufficient to warrant a stay of the Kansas case.

As for McKesson's speculation on the preclusive effects the outcome of the New York case may have on the Kansas case, the court notes that, based on the record before it at this time, none of the issues in the New York case have been decided nor has a final judgment been entered. Accordingly, the court concludes that an analysis of collateral estoppel or res judicata arguments at this juncture would be premature. *See Northern Natural Gas Co. v. Grounds*, 931 F.2d 678, 681 (10th Cir. 1991)(holding that res judicata applies when there is a final judgments on the merits and collateral estoppel applies once a court has decided an issue of fact or law necessary to its judgment). Furthermore, although McKesson alleges that the New York case could result in a trial as early as September of 2007, that is merely speculation. The New York case was filed on August 15, 2006 and the Kansas case was filed on September 15, 2006, just a month later. The Kansas case is just as likely to result in a trial

---

        expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct.

*Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 424, 77 P.3d 130, 150 (2003)(citation omitted).

6

before the New York case as after.

Finally, the court notes that the plaintiff has clearly expressed its desire to move forward with the Kansas case. Furthermore, there is no evidence of forum shopping or any other indication of bad faith on the part of the plaintiff in this case. Moreover, the court must heed the Tenth Circuit's advice that "[t]he right to proceed in court should not be denied except under the most extreme circumstances." *See Chilcott*, 713 F.2d at 1484   After weighing all of the abovementioned factors against the interests of judicial economy, the court concludes that the Kansas case should move forward. Accordingly, the court exercises its discretion to deny Mediware's motion to stay this proceeding.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to stay (doc. 5) is denied.

**IT IS SO ORDERED** this 9th day of February, 2007.

                                             s/ John W. Lungstrum
                                             John W. Lungstrum
                                             United States District Judge