**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

**MEDIWARE INFORMATION SYSTEMS, INC.,**

    **Plaintiff,**

    v.                                                                                           Case No. 06-2391-JWL

**McKESSON INFORMATION SOLUTIONS, LLC,**

    **Defendants.**

_____

**MEMORANDUM & ORDER**

Plaintiff Mediware Information Systems, Inc. ("Mediware")[1] has brought this diversity action against McKesson Information Solutions, LLC, ("McKesson")[2] alleging tortious interference with contract (Count I), tortious interference with business expectancy (Count II), and misappropriation of a trade secret (Count III). This matter is presently before the court on McKesson's motion to dismiss (doc. 23). The court will construe this motion as one for judgment on the pleadings pursuant to Rule 12(c) because it was filed after

---

[1] Mediware is a New York corporation with its principal place of business located in Lenexa, Kansas. Mediware designs blood management software and provides clinical information systems to the health care industry.

[2] McKesson is a Delaware limited liability company with its principal place of business located in Georgia. McKesson provides software, hardware and various services to hospitals and others in the health care industry.

McKesson filed its answer to Mediware's complaint. For the reasons stated below, McKesson's motion is denied, but Mediware is ordered to file no later than April 6, 2007, a reply to McKesson's answer pursuant to Federal Rule of Civil Procedure 7(a) in light of McKesson's reliance on the competitor's privilege.

**I.     Background**

Mediware designs blood management software, the purpose of which is to manage blood products provided by donors and administered at hospitals, blood banks, and blood centers. Mediware contracts with its customers for the licensing of this software and for the sale of services related to the software. One condition of these licensing agreements is that the customer agrees to keep the software confidential and not to use it in any manner other than as authorized by the agreement without Mediware's prior written consent.

Mediware stopped licensing two of its software products, Hemocare and Lifeline, to new customers in 2003. Mediware informed its customers who used these products that it would no longer provide support and maintenance for Hemocare and Lifeline after June 2007. Mediware alleges that it expected a majority of these Hemocare and Lifeline customers to transition to HCLL, Mediware's newest blood management software.

According to Mediware, McKesson offered to provide data extraction services to Mediware's Hemocare and Lifeline customers, thus enabling those customers to switch to McKesson's blood management software. Mediware argues that the underlying information could not be extracted without accessing the software. Thus, Mediware alleges, the customers who accepted McKesson's offer breached their contracts with Mediware by

providing McKesson access to the software in order to extract the underlying information.

Based on these facts, Mediware has asserted the following claims against McKesson: tortious interference with contract (Count I); tortious interference with business expectancy (Count II); and misappropriation of a trade secret (Count III). McKesson's motion to dismiss specifically argues that: (1) Mediware's tortious interference claims are precluded by the Kansas Uniform Trade Secrets Act (KUTSA); (2) Mediware's tortious interference claims are precluded because the first amended complaint (hereinafter "complaint") fails to allege malice; (3) Mediware's tortious interference with business expectancy claim is precluded because the complaint fails to allege wrongful conduct; and (4) Mediware's failure to allege malice in its complaint precludes it from seeking punitive or exemplary damages.

## II.   Standard

A motion for judgment on the pleadings under Rule 12(c) is analyzed utilizing the same standard that applies to a Rule 12(b)(6) motion. *Park Univ. Enterprises, Inc. v. American Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006). The court will dismiss a cause of action for failure to state a claim only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief," *Yanaki v. Iomed, Inc.*, 415 F.3d 1204, 1211 (10th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1088 (10th Cir. 2003). The issue in resolving

a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**III.   Analysis**

*A.   KUTSA*

McKesson first argues that Mediware's tortious interference claims are precluded by the KUTSA, K.S.A. § 60-3320 *et seq*.  K.S.A. § 60-3326 provides:

> (a) Except as provided in subsection (b), this act displaces conflicting tort, restitutionary and other law of this state providing civil remedies for misappropriation of a trade secret. (b) This act does not affect: (1) Contractual remedies, whether or not based upon misappropriation of a trade secret; (2) other civil remedies that are not based upon misappropriation of a trade secret; or (3) criminal remedies, whether or not based upon misappropriation of a trade secret.

This statute codifies Kansas's version of the Uniform Trade Secrets Act (UTSA).

As the parties point out, the case law interpreting similar codifications of this UTSA provision is varied.[3]  One line of cases holds that the UTSA preempts only those civil claims based upon trade secrets as defined in the statute, but does not preempt civil claims based on information that fails to meet that statutory definition. *See Burbank Grease Services, LLC v. Sokolowski*, 717 N.W.2d 781, 793 (Wis. 2006).  These cases state that, until it is determined whether the allegedly misappropriated information constitutes a trade secret, the question of preemption cannot be addressed. *See, e.g.*, *Cenveo Corp. v. Slater*, 2007 WL

---

[3] Because no Kansas state court has considered this preemption provision of the KUTSA as applied to tortious interference claims, the court must look beyond Kansas law for guidance.

527720, at *3 (E.D. Pa. Feb. 12, 2007); *Genzyme Corp. v. Bishop*, 463 F. Supp. 2d 946, 949 (W.D. Wis. 2006). Another line of cases holds that determining whether the allegedly misappropriated information constitutes a trade secret is irrelevant for preemption purposes because the UTSA preempts all claims based upon the unauthorized use of information, even if the information does not meet the statutory definition of a trade secret. *See, e.g., Ethypharm S.A. France v. Bentley Pharmaceuticals, Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005); *Mortgage Specialists, Inc. v. Davey, IV*, 904 A.2d 652, 664 (N.H. 2006). This court need not predict which view Kansas would adopt, however, because it finds the tortious interference claims alleged by Mediware in this case are not "based upon misappropriation of a trade secret" and thus are not preempted by § 60-3326.

In *Ethypharm S.A. France*, the Delaware district court analyzed whether the Delaware UTSA preempted the plaintiff's claims for fraud, unjust enrichment, and intentional interference with contractual and prospective business relationships. *Ethypharm S.A. France*, 388 F. Supp. 2d at 433. There, the court examined whether the failure of the misappropriation claim would doom the potentially preempted claim, stating that a claim is preempted if it is "grounded in the same facts which purportedly support the [misappropriation claim]." *Id.* (citations omitted). The court concluded that the fraud and unjust enrichment claims, which were based entirely upon the same facts supporting the plaintiff's misappropriation claim, were preempted. *Id.* at 434. The intentional interference claims, on the other hand, were not preempted because, although some of the same facts which supported the misappropriation claim were alleged in the tortious interference claims,

5

the court found the tortious interference claims were "not necessarily 'grounded' in those facts." *Id*. In making this determination, the court compared the plaintiff's allegations with the elements of each tortious interference claim, and concluded that at the motion to dismiss stage, the alleged acts could have satisfied the elements of the intentional interference claims, even if the misappropriation of trade secrets claim failed. *Id*. at 435. *See also IDX Systems Corp. v. Epic Systems Corp.*, 285 F.3d 581, 586 (7th Cir. 2002)("The tort of inducing breach of a non-disclosure contract . . . is 'not based upon misappropriation of a trade secret.' It is based on interference with the contract."); *Mortgage Specialists*, 904 A.2d at 666-67 ("to the extent that the tortious interference claim is supported by more than the mere misuse of [plaintiff's] customer information, it is not preempted.") .

In this case, the court similarly finds that Mediware's tortious interference claims are not preempted. These claims are based on allegations that McKesson intentionally interfered with Mediware's contracts with its customers and intentionally interfered with Mediware's expectation to continue doing business with those customers.[4] At this stage of the litigation, the court finds that, based on the allegations in the complaint, Mediware could prove facts in support of these tortious interference claims which would entitle it to relief, regardless of the success of its misappropriation claim. Accordingly, the court denies defendant's motion for dismissal of these claims on the basis of KUTSA preemption.

---

[4]As indicated in this memorandum, the court denies McKesson's arguments that these allegations are insufficient to state a claim upon which relief can be granted.

*B.     Mediware's failure to allege malice*

McKesson next argues that Mediware's claims for tortious interference with contract and tortious interference with business expectancy fail to state a claim because they do not allege McKesson acted maliciously. In making this argument, McKesson relies upon a Kansas Supreme Court decision which discussed the interplay between malice and claims for tortious interference with contract and prospective business expectancy. *See Turner v. Halliburton Corp.*, 240 Kan. 1, 12, 722 P.2d 1106 (1986). Despite this discussion, however, more recent Kansas opinions have not listed malice as an element essential to a claim for tortious interference with contract or tortious interference with business expectancy. *See Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 423, 425, 77 P.3d 130 (2003).

The essential elements of a claim for tortious interference with contract are: (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his or her intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom. *Id*. at 423. The essential elements of a claim for tortious interference with prospective business expectancy are: (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct. *Id*. at 424. Because McKesson does not argue that Mediware's claim lacks any of the elements required by the claims, the court is not persuaded that McKesson is entitled

7

to dismissal of these claims.

Furthermore, the Kansas Supreme Court made the following statement in *Turner*, which was later discussed in *Burcham*: "'The term "justification" has been said not to be susceptible of any precise definition. It is employed to denote the presence of exceptional circumstances which show that no tort has been in fact committed and to connote lawful excuse which excludes actual or legal malice.'" *Burcham*, 276 Kan. at 425, 77 P.3d 130 (citing *Turner*, 240 Kan. at 12-13, 722 P.2d 1106). With this passage, the Kansas Supreme Court shows that malice is interwoven with the notion of justification, or the lack thereof.

The concept of legal malice and justification is evident from the "absence of justification" requirement of a tortious interference with contract claim and the "intentional misconduct" requirement of a tortious interference with business expectancy claim. Accordingly, because Mediware has alleged each of these requirements, the court deems that sufficient to survive McKesson's motion to dismiss.

*C.   Mediware's failure to allege wrongful conduct*

Although Mediware's complaint contains allegations stating each element of its tortious interference with business expectancy claim, McKesson argues that this claim should be dismissed due to Mediware's failure to plead "wrongful means." McKesson bases this argument upon the competitor's privilege to interfere with the prospective business expectations of a competitor as stated in Restatement (Second) of Torts § 768. The privilege, which this court predicted Kansas would adopt in *DP-Tek, Inc. v. AT&T Global Information*

8

*Solutions Co.*,[5] permits a third party to interfere with the prospective relations of its competitor so long as the relation concerns a matter involved in the competition, the competitor does not utilize wrongful means, its action does not create or continue an unlawful restraint of trade, and its purpose is at least in part to advance its interest in competing. *See DP-Tek*, 891 F. Supp. at 1521 (citing Restatement (Second) Torts § 768).

Typically, a plaintiff is only required to plead facts sufficient to set forth its claims; a plaintiff is not required to plead facts sufficient to overcome a defendant's affirmative defense, such as the competitor's privilege in this case. Therefore, in the absence of authority from Kansas courts holding that wrongful means is an element that must be plead by the plaintiff, this court will not dismiss Mediware's tortious interference with business expectancy claim for failure to plead wrongful means in this case.

The court notes, however, that under Federal Rule of Civil Procedure 7(a), it may order a reply to an answer. In the interest of judicial economy, the court orders Mediware to reply to McKesson's answer and to set forth its allegations concerning the competitor's privilege asserted by McKesson.

D.  *Punitive damages*

Finally, McKesson argues that Mediware's claim for punitive damages should be dismissed because the complaint does not allege any malicious, willful, or wanton conduct

---

[5] 891 F. Supp. 1510 (D. Kan. 1995) *affirmed by* 100 F.3d 828 (10th Cir. 1996).

9

by McKesson.  The court disagrees.  If Mediware ultimately succeeds on either of its tortious interference claims it will have established the kind of willfulness or legal malice sufficient to support a claim for punitive damages. Mediware's demand for punitive damages thus is not subject to dismissal at this time, irrespective of Mediware's failure to plead malice in so many words. Mediware may wish to clarify its position in this regard in formulating the final pretrial order in this case, however, because any instructions to a jury on punitive damages will apprise the trier of fact of the necessary prerequisites for an award of punitive damages.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to dismiss (doc. 23) is denied.  Plaintiff is ordered to reply to defendant's answer in accordance with this memorandum no later than April 6, 2007.

**IT IS SO ORDERED** this 26th day of March, 2007.

/s/ John W. Lungstrum
John W. Lungstrum
United States District Judge